ROBERT C. FRY AND FRANCES FRY, HIS WIFE, APPELLANTS, *v.* JAMES LEO O'KEEFE AND LOTTIE O'KEEFE, HIS WIFE, RESPONDENTS.

No. 3780

July 6, 1956.                                   299 P.2d 202.

(Rehearing denied October 9, 1956.)

*Guild, Busey & Guild,* of Reno, for Appellants.

*Bert Goldwater,* of Reno, for Respondents.

## OPINION

By the Court, EATHER, J.:

This is a suit to dissolve a joint venture. Involved upon this appeal is a question of proper division of the venture's capital. The venture proved unprofitable and a substantial loss was sustained. The trial court held that, under the agreement between the parties, the capital advanced by plaintiff O'Keefe was first to be repaid. Since the proceeds available after discharge of debts left nothing to go to defendant Fry the court awarded the full balance to O'Keefe. Fry has taken this appeal. We agree with the construction of the trial court and upon this ground the judgment must be sustained.

The written contract was drawn by Fry. O'Keefe was to advance capital in the sum of $36,000. Fry was to advance capital in the sum of $4,300. With these sums and with services to be performed by Fry in his capacity as contractor and construction engineer the parties were to engage in the venture of constructing an apartment building. The agreement provided that, "Upon completion of said building project it is mutually agreed that all the above property and buildings shall be put on the market for sale, and upon sale of same, it is agreed that Mr. and Mrs. J. O'Keefe shall receive their total investment of $36,000 and Mr. and Mrs. Robert C. Fry shall

receive their investment of $4,300, and any and all profits thereafter are to be divided equally among the joint owners."

The meaning and intent of the parties as expressed by this provision is clear from the testimony of Fry. Upon cross examination by O'Keefe upon his case in chief, Fry as an adverse witness testified: "Q. Then as I understand it, under the terms of that agreement, Mr. O'Keefe was to get his money back either on a loan or upon sale so that he would be free and clear and would share in the profits? A. I believe Mr. O'Keefe will agree I told him under any circumstances whether we kept the property for income or whether we sold it he was to receive his money back first that he put in and I would receive the balance." This testimony was admitted without objection. It stands uncontroverted, clearly establishing the investment of the O'Keefes as preferred and prior in point of reimbursement.

The original plans of the parties were later modified. The changes involved substantial additional cost which was raised by additional capital advanced by O'Keefe and $20,000 by third parties. The changes also required substantial additional constructional services from Fry and substantial use of his construction equipment. Testimony by Fry as to the modification of the original agreement was at first admitted by the trial court over the objection of O'Keefe. Later, upon O'Keefe's motion, it was stricken by the court insofar as it tended to vary the terms of the original written contract. This action is assigned as error by Fry.

The testimony offered, however, in no respect tended to eliminate or modify O'Keefe's right to prior reimbursement. Even under the oral contract he was first to be reimbursed. The only material difference is that the parties now contemplated holding the property for income and reimbursing themselves (first O'Keefe and then Fry), out of income before sale. Upon sale the

profits were to be equally divided. Even if the action of the trial court in this respect was error it was without prejudice to Fry for the right of priority enjoyed by O'Keefe remained unchanged.

Upon completion of the building differences arose between the parties. This action for dissolution was brought by O'Keefe. It was then clear to Fry that, in the light of their differences the venture could not continue to operate successfully. Fry agreed to dissolution. He stipulated that the property be sold. It was sold at public sale with resulting capital loss.

Fry now contends that the original written contract, together with its oral modification, demonstrates that the priority right of O'Keefe was to attach only in case of private sale or division of operating profits; that it was never intended to apply to forced sale. It may well be true that the parties optimistically contemplated only a successful venture and did not give thought to the question of division in case a loss was sustained. The fact of the prior right of reimbursement remains, however, and in the words of Fry himself it was to apply whether the property was kept for income or was sold.

Judgment affirmed with costs.

MERRILL, C. J., and BADT, J., concur.